The court will now call case 118070, Ellen Folta v. Ferro Engineering. Are you ready to proceed? Yes, I am. Defense ready? Good morning. May it please the court. Counsel, my name is Josh Vincent. I represent the defendant in this case, Ferro Engineering. The question presented in this case is whether an employee who has suffered an accidental injury, work-related injury, can bring a common law court action against his employer because the time for bringing a worker's compensation claim has expired. We submit the answer to this question is no. The facts are pretty straightforward. The plaintiff's decedent, James Folta, worked for our company, Ferro Engineering, for about four years from 1966 to 1970. During that time, he was exposed to asbestos. And 41 years later, in 2011, he developed vesithelioma. And it was at that time that he filed a common law court action against his employer. No worker's comp action was ever filed. The Circuit Court of Cook County dismissed that case with prejudice based on Section 5 of the Worker's Compensation Act. And Section 5 of the Act, it's called the Exclusive Remedy Provision, but that portion of the Act provides that no common law action is available for an injury that has suffered in the line of duty. It's very straightforward. There's no question in this case that it's ambiguous in any respect. It's not. And that was the basis on which the Circuit Court dismissed the case, that the exclusive remedy was worker's compensation under Section 5. The appellate court reversed, and the appellate court held that Section 5, the Exclusive Remedy Provision, did not apply. It held that the plaintiff could bring a common law tort action. And the basis for that was because it felt that the plaintiff, because his action was time barred under the Compensation Act, he should be entitled to a common law remedy. The statute, the Worker's Comp Act, does provide for a fairly generous 25-year statute of repose on asbestos injuries. And in this case, the plaintiff's injury didn't arise until 41 years after his exposure. So it was beyond the statute of repose. But nonetheless, the court held there was a common law remedy available now since the worker's comp remedy had expired. You know, I think the fundamental problem with the appellate court's ruling is that it destroys what you see referred to in this court's decisions and in the briefs as what's called the grand bargain. And when the legislature created the Worker's Compensation Act over 100 years ago, it was a pretty significant give and take. You know, employers accepted strict liability, liability without fault for all work-related injuries. Anything that happens in the workplace, you pay. And in exchange for that, the quid pro quo, as they call it, was a limited liability that the Act specified. And this quid pro quo, this grand bargain, is really embodied, I think entirely, in Section 11 of the Act. And I really think that's kind of a critical aspect of the court's analysis in this case, is Section 11, because that's the section that says that the compensation herein provided, together with the provisions of the Act, shall be the measure of an employer's responsibility for all injuries, accidental injuries arising out of and in the course of the employment. And the key phrase in there that I think we should need to focus on for purposes of this case is it says, the compensation herein provided, together with the provisions of this Act. So it's not just that compensation is limited. There's a schedule of compensation under the Act. But there are other provisions that provide certain protections that the employer gets in exchange for accepting liability without fault for work-related injuries. And two of those protections that the Act provides are a statute of due post, in this case one that's 25 years long. The legislature made that determination that that was an appropriate time to bring these claims. And the other provision that is part of that phrase, compensation, together with the provisions of the Act, is Section 5, exclusivity, that there would be no common law cases to defend. You know, I mean, the plaintiffs tend to say that, you know, the exclusivity provision is only there to prevent a double recovery, but that's really not true. This is really part of the entire bargain. It is not just any concern over double recovery. It's the fact that you, as an employer, are not going to have to be called upon to even defend a common law action. There won't be any. The entire system of industrial accidents is moved into the workers' compensation scheme. That was the grand bargain that the legislature essentially struck for employers and employees in the State of Illinois. I think you wisely started here. What is the whole purpose of the Act, and what are the interests involved, and how has the legislature shaped those balancing interests? And that's certainly important. I was struck that everyone seems to be citing Larson on workers' compensation law. I'm sorry? Larson? Yes. Everyone seems to cite that, so I figure out what that's about. Larson says this. It ought logically to follow that the employer should be spared damage liability only when compensation liability has actually been provided in its place, or rights of action for damages should not be deemed taken away except when something of value has been put in their place. In other words, if there is this give and take, if there is no compensation, then shouldn't there be a right to damages? Well, the Court has already addressed that question. I mean, there's a series of three cases that have come before this Court that have addressed that precise circumstance where if someone – the question was if someone is unable to recover any benefits under the Act, should they then be entitled to bring a common law action? And those three cases are Mushon v. National Garages, Caterpillar v. – Now, in each one of those cases, the plaintiffs suffered an injury for which the Act did not provide damages. And in each one, the plaintiff brought a common law action under the exact same theory, what Larson is sort of talking about there, that if you can't recover any damages, then you should at least be able to bring a common law action. And the Court said no in all three instances. And the reason is because the way the statute is written and the way the statute is structured is that the provisions, the coverage of the Act, what it sweeps into its fold, has nothing to do with the ability to recover damages. And I think the best example really is the Dooley v. Caterpillar case. I mean, in that instance, the plaintiff's wife was killed in a forklift accident in Caterpillar. And so the plaintiff brought a common lawsuit. The husband brought a common lawsuit for the damages for her death. And the Court said no. It's barred by exclusive remedy provision. He said, well, wait a minute, there was no compensation. There was no remedy because I wasn't dependent on her for support. And the Act only provides a remedy if your spouse is dependent on the decedent for support, almost a parallel to this case where you have the widowed spouse suing on behalf because of the death of the decedent. And the Court said no. Any time that an injury falls within what they refer to, the Court, this Court referred to, and Larson, as the coverage formula of the Act, an accidental injury arising out of and in the course of the employment, then all of the Act's provisions apply and you're subject to them. And in that instance, there was no recovery because the spouse wasn't dependent on support. In this case, the injury, there's no recovery because the statute of repose has expired. In the Mushan case, there was no recovery because the particular type of injury that the plaintiff suffered was one for which the Act didn't actually provide a remedy. So it's not unheard of. It's been addressed previously by this Court. And that's because the Court has always focused on what it's referred to as the coverage formula. If it falls within the coverage formula of the Act, the injury is accidental and arises out of and in the course of the employment, then the claim is subject to all of the Act's provisions, and that includes the exclusivity bar, that includes the statute of repose, that includes provisions that limit recovery in the event that you are or are not dependent on the decedent for support, all of those factors. And that's just, I mean, that's what the legislature decided. And I know that to some extent, yes, Larson is a little unhappy maybe with that result, but Larson is also the same treatise that this Court cited in Mushan. In fact, I think it's that very provision that Mushan cited that said, if the claim falls within the coverage formula of the Act, it doesn't matter that it doesn't necessarily provide a remedy. There's going to be those circumstances where it doesn't. Mr. Vincent? Yes. Does the Exclusive Remedy Provision Act incorporate the discovery rule? No, it does not. In this case, there is a provision within Section 6D of the Act that requires that the disability manifest itself within three years of the exposure, but then you have 25 years within which to bring the claim. And that's part of the problem here, because I want to talk a little bit about, you know, if you think about what's happened here from the standpoint of the legislature created, it's rendered meaningless. I mean, the employer is actually made worse off. I mean, the statute of repose, the purpose of it, as this Court has addressed many times, is to bring finality, to end the cutoff, the long tail of liability. It's been upheld multiple times. Orlack, DeLuna, Mega, all of those cases have all involved circumstances, like this one where the plaintiff didn't discover his injury until after the statute of repose had passed. And the Court upheld them all and said, that's the unfortunate aspect of a statute of repose. It cuts off liability. But in this case, the statute of repose is not only rendered meaningless, but the employer is placed in a worse position, because here the legislature has created this statute of repose to protect the employer as part of the grand bargain, and yet now the Court is saying, you know, the appellate Court is saying, it doesn't matter. Now you will have to face a common law cause of action. A common law cause of action is revived. The employer would actually be better off in this case if there were no statute of repose. Because if the Act had no statute of repose, then there's no question that Mr. Folta's injury would have fallen within what he could have been able to make, a worker's compensation claim, and we wouldn't even be here today. But it's by virtue of the fact that there is a statute of repose that we're here. So it's ironic that we're actually worse off, that a common law remedy is actually revived by operation of the statute of repose. That is not anywhere near the outcome that I think the legislature intended at all. So it does destroy that aspect of it. You know, I want to try to package a little bit the appellate Court's decision here, because the thing that the Court focused on, and I think part of what's driving your question, Justice Tice, in that reference to the Larson Treatise, is the use of the term compensable in a series of decisions that this Court issued, the Pathfinder Trilogy, we've referred to them, Pathfinder, Mirabre, and Colliers. In all of those cases, plaintiffs brought what were essentially emotional distress damage claims, common law tort claims against their employer. And in all three cases, the Court held, as we urge it to do here, that because those injuries all were accidental and arose out of it in the course of the employment, there was no common law remedy available. And what happened here is that the appellate Court kind of jumped on this Court's use of the word compensable. And what does that term mean? Compensable is not a word that appears in the Act itself. And the portion of the Mirabre decision that the appellate Court jumped on is a listing. It's not even really a holding of the Court in Mirabre. It's a description. It's descriptive of the Act. The Court said in the context of discussing when you can and can't bring a common law action against the employer, it said there's four circumstances. It's either not accidental or it doesn't arise out of the employment, meaning there's no causal connection to the employment, or it didn't arise in the course of the employment, meaning at a time or place where you're working, or it's not compensable under the Act. And the term, that use of the word compensable is what the appellate Court jumped on and said, looking at a Fifth District decision, that was really the main authority that relied on a case called Toothman, it said, well, compensable, that must mean that the Act doesn't apply if you can't recover damages. Recoverability and compensability is essentially what the Court said. They're the same thing. And that is exactly what the decisions in Mushan and in Dooley and in Laird all said is wrong, that whether or not you are able to recover damages under the Act has nothing to do with its application. Its application is dependent entirely on how the injury occurred, not the type of injury, not whether you can get damages, not the other provisions of the Act that may control how much damages or what element of damages are recoverable. It's simply a question of how did the injury occur. And that's what's common in all three of those cases. So this Court has really already rejected the whole underpinning of the appellate Court's decision, including that Fifth District case, Toothman, because that was really the entire purpose of it. The other thing that I think is interesting is not only is that misreading of the Mirabre decision, but this Court has previously explained in other cases what the term Sostrom versus Sproul, and the Court actually said right there clearly compensable means an injury that arises out of it in the course of the employment. So it's been defined there. And in Unger versus Continental, another case this Court decided, it said the same thing, citing Sostrom, but pointing out that the test for compensability is identical for what is a line of duty injury. And that's what brings all of this within the sweep of the Act. There are probably, by my count, at least six other courts around the country, most of them State Supreme Courts, that have all addressed this identical question. You know, what happens when somebody's illness, an employee's illness manifests itself after a statute of repose has expired and they can no longer bring a worker's compensation claim. So this has been tried before. And in the cases, all of those cases that have found in favor of the position that we advocate here that the action is barred, there is no common law remedy, the statutes were all very similar, if not identical, to Illinois, because they have a coverage formula that encompasses, that determines whether it falls within the Act based on how the injury occurred and is not based on whether or not you're able to actually recover damages. Now, there's two exceptions. There's a Pennsylvania Supreme Court case that goes the other way, and there's a Montana Supreme Court case that goes the other way. But if you look closely at the language of those statutes, they're completely different than ours. In the Pennsylvania case, what the statute said was that it only applies to injuries that manifest themselves during the three-year period in which you can bring a claim. So if the injury, that's how they define the injury for purposes of the Act, is one that occurs, one that arises within the three-year statute of limitations. Well, in that case, if the plaintiff's injury obviously arose outside of it, the Act does not apply by its own definition. It was a straight statutory construction case, and that's really what this one is too. And in the Gidley case, which is the Montana case, in that case it said that it had an exclusive remedy provision, no common law action exists, but then it has a clause in it that says, except where the employee is not eligible for compensation. We don't have any language even remotely like that. So, you know, it is a harsh result. There's no question about that. But that's what happens when the legislature imposes a statute of repose. It's going to hurt in some respect, and that's unfortunately what happens here. And there are some unfortunate implications from the appellate court's ruling in this case. First of all, it creates indefinite liability for employers. I mean, now you're liable forever. If the plaintiff doesn't have their injury and doesn't bring it within the statute of repose, well, now in the appellate court's decision, they can bring it any time within two years of when they discover it after that as a common law action. So not only have we lost the protection, the limited liability of the Workers' Compensation Act, we've gained indefinite liability into the future for unlimited tort damages. So when I say that the appellate court's decision obliterates or, you know, this grand bargain that the legislature struck under the Workers' Compensation Act, that's no exaggeration. Employers will be liable forever under the circumstances of this case. There's no limit as a result of it. There's an insurance problem, and I think it's fair for the court to take into consideration the economic impact that this decision will have on employees and employers alike. Because, you know, when a workers' compensation claim is, you buy insurance. The statute requires that you have insurance for the workers' compensation claim. But if the claim is not a workers' comp claim, now the question is, well, does my commercial general liability policy cover it? Those all contain exclusions for employee injuries. So this falls right into a gap where there's not going to be any coverage, which hurts employees because, in some instances, these companies, as you see in this case, Ferro Engineering went out of business in 1998. There's no insurance. Actually, that part's not a record, but it's a consideration I think the court has to take into account. There's also sort of this injustice that I think arises from this case where someone who has remained illness-free for over 40 years to lead a relatively healthy life overall now gets to sue and tort and recover in limited damages, whereas a much younger worker whose injury manifests early on, that worker is stuck with only workers' comp. And I don't think that was the result that the legislature intended there either. I think it intended them all to be treated the same. Thank you, counsel. Thank you. May it please the court. My name is Tim Eaton, and I represent the plaintiff, Fultz, in this matter. Your Honors, I look forward to talking about that grand bargain. The grand bargain that was entered into about 100 years ago was that the employee would give up their common law right to sue, subject to all pain and suffering and whatever other damages he or she would receive, in exchange for the employer having a no-fault system where they could seek compensation. So then the employee didn't have to worry about common law defenses. It would be no fault. They would be entitled to compensation if they were entitled to it under the Act. What counsel and FARO want you to do in a decision is give the employer the quid but take away the quote from the employee. Because under this provision, it does not allow the employee to file an application for compensation. And now they want to stretch that to it also denies he or she the right to file a common law action. If you read the plain language of this provision, it says, in cases of disability caused by exposure, et cetera, within 25 years after the employee was so exposed, the right to file such application shall be barred. It simply denies that employee from filing an application. Counsel keeps referring to this as a statute of repose. If anything, it's a hybrid. Because if you look at typical statutes of repose that this Court has often looked at, for example, the medical malpractice statute of repose, it begins by saying no action, no action, whether based upon tort or breach of contract or otherwise. That is not what this provision states. It simply says no application for workers' compensation can be filed. Mr. Eden, if we accept your argument, would this extend to cases beyond those that involve asbestos, in other words long latency periods, or could it? So what kind of effect would this have? Your Honor, first of all, I think it's possible, but I'm not sure of any other cases that I've looked at where you have such a long latency period. Mesothelioma is somewhat different in that, as the Court recognized in the Pennsylvania Supreme Court case of Tuohy, it has a 30 to 50-year latency period. So I think it would be confined to just those few cases where there would be that lengthy latency period. I'm aware of no others. And counsel is suggesting somehow that this is going to be this explosion of litigation against the employers if this Court would allow a common law action to go forward. Well, there are a lot of suppliers and manufacturers of some of the products involved here that caused the injury that have been sued. All that would happen was that the employer, who was probably the principal person at fault for allowing that exposure, would just be added to the litigation, and then the employer would have to pay their fair share. Right now it would fall totally on manufacturers who may not be that responsible. So that's the only thing that would happen. There would not be this explosion of litigation that they counsel against. In fact, that was the same argument that Farrow argued in Tuohy. They were the defendant also in the Pennsylvania Supreme Court case, and they talked about this avalanche of litigation. There would be people leaving the state. There would be a loss of jobs. Well, in fact, as we pointed out in our brief, that did not happen. And as a matter of fact, the unemployment rate there has gone down precipitously since that case has been decided. There hasn't been this mass exodus of employers in that state. It didn't happen. It's like chicken little in the sky is falling. You hear that all the time. Whenever someone is seeking additional benefits, someone is going to make that claim. But here, here we have, if the court follows the plain language of the statute, it only bars the workers' compensation. And, Justice Tice, you asked about Professor Larson. This court, at least as far as we could count, has cited to Larson's treatise over 150 times. And he says in this treatise, and this is referring to the FOLTA case decided by the appellate court before this court weighs in, jurisdictions, including Illinois and Pennsylvania because of TUI, have refused to follow the twisted logic that would bar the claim because it was unknown, Your Honor, discovery rule, at the time the statute of repose expired, and then bar the civil action because of the exclusive remedy provisions of the state workers' compensation law. And, Your Honors, counsel mentioned, well, this has been decided in four or five other state Supreme Courts, and they've reached the same decision. Counsel in his brief admitted that some of those state Supreme Courts cited to the Weldon case, which is a Third Circuit federal case that was decided, I believe, in sometime the late 80s, early 90s. Weldon was predicting what the Supreme Court of Pennsylvania would do. The Supreme Court of Pennsylvania overruled Weldon, which was the basis for those other state Supreme Courts, and said explicitly that Weldon is not good law. The dissent is the only person that cited it in that case. So all these courts that relied upon the harsh result in Weldon, I think the Pennsylvania Supreme Court has put that issue to rest. This Court, in cases in Mirabry and Collier, which we've all cited, have been instances where there had been some compensation, some possibility of compensation that was awarded. That is not the situation here. This Court has never said where there hasn't been some possibility of that then you're not entitled to file a common law action. There were recoveries in those cases. There were recoveries. Counsel relies considerably on the Mushan case and even tries to say, well, Larson supports that. Larson doesn't support it. You just heard what Larson said. What Mushan involved, and we would say is correctly, that the plaintiff could not get all of the compensation that he wanted for elements, all the elements of his case. In that case, he was looking for compensation for impotency, which was not allowed, but he got compensation for the rest of his injury. That's part of the grand bargain. I get it. But here, there's no possibility for compensation, and he cannot file an application. Therefore, there should be the right to file a common law action. Could you address the insurance issue? Well, Your Honor, first of all, I know, and I'm sure this Court has heard this claim many times, that there would be, they would create somehow an insurance crisis. Ferro Corporation, although Ferro Engineering may no longer exist, Ferro Corporation was one of the parties in TUI. There's, I'm sure, although the amicus briefs were suggesting there may be no insurance, there's nothing in record about that. Companies carry insurance that would cover this type of thing. And when it comes down to it, how should that balance weigh? And here, I think, is the answer, whether it's covered by insurance or not. And that is, this Court and the TUI Court have always taken into account the humanitarian purposes of the Act. This Court has consistently held that the Act was designed to be a humane law of a remedial nature whose fundamental purpose is to provide employees and their dependents prompt, sure, and definite compensation together with a quick and effective remedy. This Court just recently, unanimously, in Illinois State Treasurer versus Illinois Workers' Commission, a decision that was unanimous of this Court, stated, although different issue, but reaffirmed the principle that the main purpose of the Workers' Compensation Act is to provide financial protection for injured workers, and its provisions must be interpreted liberally to effectuate that purpose. I'm not asking this Court to interpret that Act liberally. All I'm asking is that it enforce the plain language of that Act, which states that the only thing that's barred in this circumstance is an application for workers' compensation. If you stretch that to mean that then it also bars a common law, you're not only not liberally interpreting it, you're interpreting it in a way that goes against the grain of humanitarian purposes of the Act. It seems that Mr. Vinson's argument was that the workers' comp route was the action was barred, and therefore, carrying his argument further, that the statute as proposed says you have to bring your claim within the 25-year period, it's unnecessary to address whether all claims are barred. How do you respond to that? Your Honor, the way I would respond is, again, under the plain language of the Act, an application, period. The exclusivity provision, which he refers to, actually refers in Section 11, let me read exactly what it says, I won't go through the whole thing, no common law or statutory right to recover damages from the employer, etc., other than the compensation herein provided. So it assumes that there is compensation, there's a compensation possibility, and I want to make sure the record is clear on this because, frankly, I think Farrell has misstated our position. We are not stating that if an employee has the right to file an application, like Mr. Folta did not here, but where there is a right that there does not have to be a recovery. What we're saying only is that there has to be the possibility to seek compensation. We were denied that right. If the Workers' Compensation Commission or arbitrator decides your action falls within the line of duty and we don't agree that it's compensable, that's fine. That person has had their day before the commission. We never got our day before any commission. So we're entitled to at least a day in court. So we're not suggesting by any means that there has to be a recovery if there's a claim filed and it's possible to file a claim. But here there is no possibility to file a claim. By the way, there was even a suggestion in the opening brief that I was somewhat surprised at. That if someone is diagnosed with mesothelioma and it's like in their 23rd or 24th year that somehow they're going to wait so they can file a common-law claim. Mr. Folta was diagnosed, I think, in April or May and he died in the fall  This is not the type of injury where you would not seek medical attention immediately. I mean, the idea that someone even suggests that they're going to play around with the system so they can file a common-law injury. Where, by the way, one of the things that the employee gained from that grand bargain was not having to deal with affirmative defenses that the employer kept throwing up. Well, this was the fault of somebody else or this was the fault of the employer. That's gone. That was the deal. And that's what they got out of the system. Now they want to keep that and say, well, if you can't file a compensation, he's not entitled to file a common-law remedy. The plaintiff doesn't welcome necessarily the idea that we are going to be able to file a common-law remedy 40 years after something occurred. That's going to be a difficult job. But at least we get a day in court or a day to submit our injury. And under what the defendants are arguing, we're not even entitled to that. How do you answer your opponent's argument that with that interpretation, really the disadvantages, the statute of opposed disadvantages the employer? He'd be better off without a statute of opposed because then regardless of when it came up, he'd be covered under workers' comp. Your Honor, I think the answer is this. First of all, the employer would not necessarily be better off under workers' comp. I just don't buy that argument because under workers' comp there are elements of damages that the plaintiff would not be entitled to. There would be other elements of damages that he or she as the worker may not be entitled to. It is a no-fault. But on the other hand, they are able to limit the amount of damages that they would have to pay. So it would be certainly to their advantage to have the workers' comp in place. But the legislature decided that after a certain period of time, and that was part of the bargain, that then the employee would have to go back to court in a common law action, which again is not going to be something that's easy. The question is who should bear the responsibility here? And if you look at the grand bargain and you look at the way this court has repeatedly found that this act should be interpreted liberally because of the humanitarian purposes and the remedial nature of the act, then it would seem to me that if the employer has a question with respect to just a limited number of cases as to insurance, that should not outweigh the fact that this particular person, through no fault of his own, happened to get the disease that had a latency period of 40 years, that he should not be entitled to a recovery, that his widow should not be entitled to a recovery, or the opportunity. And that's all we're asking is the opportunity for this case to go forward. The Pennsylvania Supreme Court said in Toohey, it is inconceivable that the legislature, in enacting a statute specifically designed to benefit employees, intended to leave a certain class of employees who have suffered the most serious of work-related injuries without any redress under the act in a common law. And that's what Professor Larson said as well. Ferrell does not contest, because we're at the pleading stage, that Mr. Fulton's disease and his death resulted from asbestos that he inhaled while working for Ferrell. Yet it claims it is totally immune to any and all statutory and civil claims. And that's just wrong. Allowing workers like James or the survivors like Ellen the opportunity to seek relief in common law when, through no fault of their own, they cannot receive workers' compensation benefits, because the disease is developed after the act's limitation is run, is in keeping with the letter of the act, its and the precedent of this court. Ferrell should not be allowed to escape all possibility of liability for injuring its workers using the illusory relief that wrongly claims is provided by the act as both a shield and a sword against employees and the consequences of its own negligence of action. All we want is the opportunity to pursue the cause of action for some compensation. We were not given that right under the act. The legislature decided that. The plain language of the act says that. But it does not say that we cannot seek it in a court of law, and that's all we're asking. And we respectfully request that this court affirm the appeal. Thank you. Thank you. One of the things I think Mr. Wheaton overlooks in his argument when he says that all they wanted was the possibility of being able to make a claim is that they could have made a workers' compensation claim. The statute of repose, as it is in any type of cause of action, that's an affirmative defense. It's not like they would have just walked into the industrial commission to file the application for a claim and the clerk would have looked at it and said, sorry, it's too late. It's an affirmative defense, just like all statutes of limitation and statutes of repose are. So to suggest that there was no possibility, I mean, there's a certain fallacy about this whole case when you think about it. They never tried to file a workers' compensation claim, and Ferro Engineering never had the chance to raise the affirmative defense of the statute of repose in this case. So that's a little bit of the case here that seems, I don't know, like a fallacy to me. So they did have the opportunity to file it, and that is why there is the possibility of recovery, because for all you know, maybe the employer isn't going to raise the statute of repose as a defense in the case, and we'll pay it. Just litigate the case in workers' comp. You know, Mr. Eaton says he's afforded no financial protection, that that's the inherent unfairness of this case, no financial protection that the act was supposed to provide. That's exactly what happened in the Dooley case I talked about. I mean, that plaintiff's wife was killed at Caterpillar, and they received no financial protection. And that's because it was a different provision of the act that was in place, because it said that the non-dependent spouse of someone who's injured in the course of their employment cannot recover. So, again, I mean, there's another example, a previous decision by this court where they found, or this court found, that there was no remedy available. Chief Justice Garvin, you asked about, you know, the possibility of extending to other cases. Of course it's definitely going to extend to other cases. It creates a very slippery slope. If you look at this from the standpoint of any time, any time, that's what he's advocating, any time that an employee is unable to recover workers' compensation benefits, they get to now sue in tort. Then that means that for who knows what reason someone has been denied benefits, their claim failed, that now they can bring a common law action. I mean, I'm not saying that it's going to happen immediately, but that is the slippery slope that you're heading down if you determine that simply because someone is unable to recover any benefits because of some of the provision that the legislature has provided in the statute, then ultimately that's where you're headed. I mean, their beef really is with the legislature. This is, you know, the penultimate case of statutory construction. This is what the legislature determined. This is how the court has consistently applied this statute for many, many years now. Radiology cases, you know, kind of a very similar situation in the Mega versus Holy Cross Hospital case. First time I ever had a case in front of this court back in 1985. Dominic Mega was born and had enlarged thyroids, received X-ray treatment for it as a baby, and 25 years later developed thyroid cancer. And, of course, the Med-Mal statute of limitations and repose that Mr. Eaton mentioned provided you can't sue more than four years after the act of admission. Well, it was 25 years ago. Mr. Mega got nothing. No remedy. And that was constitutional arguments were raised in that case that that was unfair. But the court upheld the statute. And that's what we're asking the court to do here is to uphold the legislature's determination that in some instances, I mean, clearly the legislature contemplated that there were going to be cases that were going to be parked. I mean, what's the point of having a statute of repose if it's not for the purpose of barring some claims after a certain period of time has passed and letting the employer know that your liability has ended? That's purposive. So, you know, the legislature obviously intended that this would be a result in some instances. You know, and maybe Mr. Eaton is right. Maybe there aren't very many cases that would arise like this. Maybe that's what the legislature was thinking when it decided that 25 years was a sufficient period of time. But that is the law. And if they want to change the law so that you can bring a common law action once your worker's comp claim has become time barred, then they need to go across the street to change that. That is not, you know, that would be judicial legislation to completely change it under the circumstances that Mr. Eaton is advocating. You know, he says it's a humanitarian act. And, yes, to a certain extent, certainly it is. You know, I don't disagree with that. But it's also got a pretty strong economic component to it. And that is what the act is geared to do is to balance rights. Sometimes, you know, there's going to be instances where somebody is not going to recover. And the legislature built provisions into the act to do that. I don't want the court to overlook the fact that he's not left without any remedy. Plaintiffs sued 14 other defendants in this case. Plaintiffs are allowed to bring the claims against all the people who supplied asbestos-containing products, brought those into the workplace. There's huge, you know, trust funds, bankruptcies, all sorts of sources of recovery. We never know exactly how much they recover in a case like this. All 14 of the defendants in this case settled. We don't know how much money they paid, but they all settled. One went right to the eve of trial. So it's not like plaintiff goes home with nothing in this case. It's just that they don't have a remedy against the employer. That's the only thing that this case demonstrates. Mr. Eaton is critical of the Weldon case, the Federal Court of Appeals decision, saying that it guessed wrong on the Pennsylvania Supreme Court decision. But, you know, that misses the point. You know, Weldon and the reason why it's cited by so many other state Supreme Courts that have followed it is because of the logic of the decision. And the logic of that decision is what we're advocating here, that when you have a statute that is written in a way that provides that all accidental injuries that arise out of the course of employment are controlled by this statute and that all of its provisions then apply, exclusive remedy, limitations and repose periods, then this is the kind of outcome. It doesn't matter. It doesn't make any difference. If there's an inability to recover damages, this is how the statute is designed. And that's what the logic of Weldon really brings to bear here because every other court that used it looked at their own statute and looked at how it was worded. And that was Arkansas, Kentucky, Iowa, Kansas, New Jersey. All of those courts looked at statutes almost identical to ours, and this is the conclusion that they reached, that there is no remedy to these circumstances. No comment on that. If the court doesn't have any questions, we would ask that you reverse the decision of the appellate court and affirm the judgment of the circuit court. Thank you. In case number 118070, Allen Folta, individually, happily, versus Ferrell Engineering, et cetera, as appellant will be taken under advisement as agenda number 12. Mr. Vincent and Mr. Eden, thank you very much for your arguments this morning. You are excused at this time. Mr. Marshall, the Supreme Court stands adjourned until Tuesday morning, May 19th at 930 a.m.